IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MICHAEL A. FADALLA , ET AL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | No. 06-2679 |
| LIFE AUTOMOTIVE PRODUCTS, ) | |
| INCORPORATED, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION REGARDING DEFENDANT'S
APPLICATION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on the application of the defendant, Life Automotive Products, Inc., ("Life Automotive") for injunctive relief. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. In its application, Life Automotive moves the Court to enjoin the plaintiff, Mr. Michael A. Fadalla, from violating the terms of a non-compete and non-solicitation agreement between the parties. For the reasons stated herein, the Court **DENIES** the defendant's application.

**I. Background Information**

The defendant, Life Automotive is a manufacturer of approximately 30 to 35 chemical additives used in the automobile "fast lube" industry. Life Automotive hired the plaintiff, Mr. Michael A. Fadalla as a National Account Executive on June 1, 2005, at which time Mr. Fadalla signed an agreement that included both a twenty-four (24) month non-compete clause and a

twenty-four (24) month non-solicitation clause. The relevant language in the non-compete clause drafted by the defendant is as follows:

> Employee shall not directly or indirectly own, manage, operate, join, control or participate in the ownership, management, operation or control of or be connected in any manner with any business, whether as agent, security holder, creditor, consultant or otherwise, *engaged primarily in transmission product sales*, trade shows and/or seminars *with International Lubricants, Inc., Heartland Manufacturing, Gold Eagle Corp., C.A.T. Products, Inc. (Run-Rite).*

(Tr. Ex. 2) (emphasis added). The relevant language in the non-solicitation clause drafted by the defendant is as follows:

> Employee shall not directly or indirectly *solicit, divert, take away or attempt to take away* any customers of the Employer, either on his own behalf or in conjunction with any other person, firm, partnership, or corporation.

Id. (emphasis added). After approximately ten months of employment, Mr. Fadalla gave notice of his resignation on March 28, 2006, and his last day of employment was April 1, 2006.

Subsequent to Mr. Fadalla's resignation, Life Automotive learned that Mr. Fadalla was associated with Oliver & Company, a distributor of automotive chemical additives that are manufactured by several different companies. Life Automotive asserts that Mr. Fadalla's association with Oliver & Company is a clear violation of the non-compete agreement. Furthermore, Life Automotive contends that, subsequent to his departure, Mr. Fadalla solicited EZ Lube, one of the defendant's customers, to leave Life Automotive with him, in violation of the non-solicitation agreement. Arguing that Mr. Fadalla has breached both the non-compete and non-solicitation clauses in the Agreement, Life Automotive now seeks to enjoin Mr. Fadalla from working for any organization that competes with the defendant and from soliciting the defendant's customers.

In response to the defendant's motions, Mr. Fadalla asserts that he has not violated the non-compete agreement or the non-solicitation agreement.  First, Mr. Fadalla contends that under the plain language of the non-compete agreement, he is only prohibited from participating in the sale of transmission products, not the distribution of such products, which is Oliver & Company's primary mode of business.  Second, Mr. Fadalla argues that any such restrictions apply only to the manufacturers specifically listed in the Agreement, which does not include Oliver & Company.  Further, Mr. Fadalla contends that he established an ongoing business relationship with EZ Lube many years prior to joining Life Automotive, which resumed at EZ Lube's request and upon EZ Lube's initiation subsequent to his departure from Life Automotive.

In a sworn deposition, Mr. Al Braun, Chief Executive Officer of EZ Lube, verified that he and Mr. Fadalla had a business relationship for many years prior to Mr. Fadalla joining Life Automotive, that Mr. Fadalla did not solicit EZ Lube after he left Life Automotive.  Mr Braun stated that he decided to dissolve the business relationship between EZ Lube and Life Automotive essentially for what Mr. Braun believed to be poor customer service and business practices that he considered in his opinion to be either deceptive or misleading.  Mr. Braun stated that after discontinuing his business relationship with Life Automotive, he contacted Mr. Fadalla in April 2006 to discuss resuming their business relationship.  Mr. Braun further verified that he initiated those discussions and that they occurred subsequent to Mr. Fadalla's departure from Life Automotive.

**II.  Legal Standard**

The preliminary injunction is "an extraordinary and drastic remedy" that should be granted with great caution.  <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997).  When faced with a motion for a preliminary injunction, a district court must consider four factors: (1) the

movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000). These factors are not prerequisites that must be satisfied before a court can issue a preliminary injunction. Performance Unlimited, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995). Rather, the district court balances all four factors in determining whether injunctive relief is appropriate. Id. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, "a district court is required to make specific findings concerning each of the four factors." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985).

### III. Analysis

#### A. Likelihood of Success on the Merits

In order to prevail on a claim for breach of the non-compete and non-solicitation agreements, the injured party must show (1) the existence of an enforceable covenant; (2) non-performance and/or conduct amounting to a breach of the covenant; and (3) damages resulting from the breach. Life Care Ctrs. of Am. v. Charles Town Ass'n, 79 F.3d 496, 514 (6th Cir. 1999). Under the facts of the present case, however, the Court concludes that the defendant is unlikely to be successful on the merits.

For a non-competition covenant to be enforceable, the agreement must be reasonable in both geographic scope and duration. Murfreesboro Med. Clinic, P.A. v. Udom, 166 S.W.3d 674, 678 (Tenn. 2005). In determining the reasonableness of a non-compete agreement, the court also weighs whether the employer has a "legitimate business interest for the protection of which a restrictive covenant is reasonable." Hasty v. Rent-A-Driver, Inc., 671 S.W.2d 471, 473 (Tenn. 1984). According to the Tennessee Supreme Court in Hasty:

> There is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned. Each case must stand or fall on its own facts. However, there are certain elements which should always be considered in ascertaining the reasonableness of such agreements. Among these are: the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest.

Id. at 473 (citing Allright Auto Parks, Inc. v. Berry, 409 S.W.2d 361, 363 (Tenn. 1966)).

Furthermore, the court in Hasty noted:

> Of course, any competition by a former employee may well injure the business of the employer. *An employer, however, cannot by contract restrain ordinary competition.* In order for an employer to be entitled to protection, there must be special facts present over and above ordinary competition. These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer.

Id. (internal citations omitted) (emphasis added).

In essence, it is the defendant's position that this court should read beyond the plain language of the non-compete covenant and find that Mr. Fadalla is enjoined from engaging in any business whatsoever related to the sales or distribution of automotive chemicals on a nationwide basis for two years. Although Life Automotive asserts that Mr. Fadalla is free to work for any company that is not a competitor, it also admits that it has a "nationwide presence with customers scattered throughout the United States." Mr. Fadalla's job title while employed by Life Automotive was as a "national account executive," indicating that he dealt with Life Automotive's accounts on a national level. As the defendant asserts that it has a nationwide presence, the geographic scope of the non-compete agreement under its proposed interpretation would necessarily be nationwide. At the present time, Mr. Fadalla is currently associated with Oliver & Company, a company located in Alabama that was not included in the covenant drafted

by the defendant. The facts of this case clearly illustrate the impossible situation in which Mr. Fadalla would be placed under the defendant's implied interpretation of the geographic scope: Life Automotive is located in Tennessee, whereas Oliver & Company is located in Alabama; the client whom the defendant alleges the plaintiff solicited, EZ Lube, is located in Southern California. Mr. Fadalla would be hard pressed to find employment anywhere in the country in his field that would not violate the defendant's proposed interpretation of the geographic scope.

Here, it appears that Life Automotive simply wants to restrain ordinary competition in the automotive chemicals business. Had the defendant seriously considered Oliver & Company to be a serious competitor for its business, it would have included that company in the language of the non-compete agreement, but it failed to do so. Furthermore, Life Automotive failed to include any language in the agreement that would have put Mr. Fadalla on notice that the covenant applied to companies other than those it listed. As the Tennessee Supreme Court stated in Hasty, an employer cannot restrain ordinary competition by contractual obligations. Id. The employer must demonstrate special facts above and beyond ordinary competition such that the employee would gain an unfair advantage in future competition. Id. The defendant in the present case has failed to establish such additional and special facts.

In determining whether Mr. Fadalla's conduct amounts to a breach of his contractual obligations, a careful analysis of the language in the agreement is critical. As stated previously, Life Automotive drafted the covenant with language indicating that Mr. Fadalla could not engage in transmission product sales, trade shows, or seminars with four enumerated companies: International Lubricants, Inc. Heartland Manufacturing, Gold Eagle Corp., and C.A.T. Products, Inc. Relying upon the plain language of the provision, it is clear that Mr. Fadalla has not violated the terms of the agreement. In his current position, Mr. Fadalla is engaged in

6

automotive chemicals distribution, not transmission product sales. Further, Mr. Fadalla is associated with Oliver & Company, an organization not identified in the agreement as a competitor of Life Automotive. In addition, Life Automotive failed to include any language that would indicate that the covenant was not limited to those four competitors and thus could potentially apply to other competitors. Because Mr. Fadalla's conduct likely did not result in a breach of his contractual obligations, the Court finds it unnecessary to address damages caused by the alleged breach.

### B. Irreparable Harm

Although the defendant alleges that serious and irreparable harm will result if Mr. Fadalla is enjoined, it has provided no evidence supporting this assertion. Life automotive further alleges that, as a national account executive, Mr. Fadalla enjoyed access to sensitive and confidential information, including the chemical formulation of its products and its clients' contact information. It is the defendant's position that Mr. Fadalla would undoubtedly use this information to his advantage should he not be enjoined from doing so. The Court is not persuaded by these arguments. First and foremost, the Court notes that Life Automotive never asserts that Mr. Fadalla ever, in fact, accessed this information above and beyond the ordinary course of his employment duties; rather, the defendant merely asserts that Mr. Fadalla had the capability to access this information during his tenure at Life Automotive. In addition, the defendant has not submitted any evidence that Mr. Fadalla in fact accessed any proprietary information regarding the formulation of Life Automotive's chemical products at any time. Indeed, it is hardly conceivable, given his role as a sales manager, that Mr. Fadalla would have any reason to access any confidential chemical formulas. Alternatively, Life Automotive asserts that Mr. Fadalla had access to the entire database of clients and potential clients whom Life

Automotive might solicit. This contact information, however, is widely available on the open market. Thus, it cannot be said that Mr. Fadalla would be certain to use Life Automotive's confidential information to obtain these contacts.

### C.  Risk of Substantial Harm to Others

In the present case, there is a substantial risk of harm if the court were to enjoin the plaintiff. For the past nineteen years, Mr. Fadalla has focused his career on the automotive products industry. Through his employment, Mr. Fadalla supports his wife and their three children. If the court were to enjoin Mr. Fadalla from working in the area in which he has established nearly two decades of experience and expertise, it would serve to prevent him from earning a living of any kind for two years. Any such injunction, therefore, would certainly result in substantial harm to Mr. Fadalla and his family.

### D.  Impact on the Public Interest

Several factors in the public interest weigh against granting the defendant's motion for preliminary injunction. First, a grant of this injunction would promote uncertainty in contract interpretation. The language used in contractual agreements between two parties should reflect the agreement of the parties and should serve as a reminder of their rights and obligations under the contract. To adopt the defendant's position would effectively add language to the contract, holding that Mr. Fadalla agreed not to work competitors "including, but not limited to," the enumerated companies, a term that Life Automotive did not draft and for which the parties did not bargain. Employees similarly situated to Mr. Fadalla could not rely upon the contractual language in their agreements to guide their future actions if employers were able to appeal to the courts after the fact for unilateral contract modification.

In addition, granting the defendant's injunction would result in an unfair restraint on ordinary competition. While it is true that non-compete agreements may be beneficial in preventing unfair competition from former employees who seek to escape their contractual obligations, such is not the case here. The Court finds that Mr. Fadalla has abided by the terms drafted by Life Automotive in the agreement. Rather than preventing unfair competition, under the defendant's view, the court would prevent any competition whatsoever, a result clearly forbidden by Hasty and in direct opposition to well established economic principles.

### IV. Conclusion

Analyzing the facts of the present case under the four factors established in Leary, the defendant's proposed injunction cannot be granted. As evidenced by the explicit language drafted by the defendant in the non-compete agreement and Mr. Braun's deposition testimony, it is unlikely that Mr. Fadalla's conduct violated either the non-compete or the non-solicitation covenants. The defendant has failed to establish that it would suffer irreparable harm without the injunction. On the other hand, it is clear that Mr. Fadalla and his family would suffer substantial harm if the injunction were granted. Finally, granting the injunction would promote instability in contract interpretation, serve as a prohibited restraint on ordinary trade, and would allow the defendant to unilaterally modify the language it drafted in the agreement. Accordingly, by separate Order, this Court denies the defendant's motion for preliminary injunction.

**ORDERED** this 18th day of September 2007.

s/Bernice Bouie Donald
BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT JUDGE