IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

MICHAEL A. FADALLA, ET AL.,

      Plaintiffs,

                                              **Jury Demanded**
                                              2:06-cv-02679-BBD-tmp

vs.

LIFE AUTOMOTIVE PRODUCTS, INC., ET AL.,

      Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

Before the Court are Plaintiffs' claims for damages under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C §§ 1161-1169, on which the Court held a non-jury trial on August 21, 2009. After reviewing the evidence, hearing the testimony of the witnesses called by each party, and weighing the credibility of those witnesses, the Court **GRANTS** statutory penalties under 29 U.S.C. § 1132 in favor of Plaintiffs in the amount of $5,335. Plaintiffs' request for attorney's fees is **DENIED.**

**I. FINDINGS OF FACT**

Plaintiff Michael A. Fadalla began his employment with Defendant Life Automotive Products, Inc. ("Life Auto") on June 1, 2005 in the position of National Account Executive. Mr. Fadalla's last day of employment with Life Auto was April 21, 2006. (Transcript of COBRA Trial Proceedings ("Tr.") at 15:25-16:1.) On May 2, 2006, Mr. Fadalla's then attorney received a notice for Mr. Fadalla to enroll in Humana Corporation ("Humana") insurance (Tr. at 17:4-8)

as Coleman-Taylor Transmission ("Coleman-Taylor")[1] changed insurance providers from BlueCross BlueShield to Humana on May 1, 2006. (Tr. at 179:1-2.) Mr. Fadalla received this health insurance through his former employer until May 31, 2006. (Tr. at 16:1-2.) On June 6, 2006, Mr. Fadalla contacted the Department of Labor ("DOL") to inquire about his rights under COBRA. (Tr. at 86:9-15.) After speaking with the DOL, Mr. Fadalla's then attorney notified Life Auto that Mr. Fadalla had not received a COBRA election notice. (Tr. at 89:15-20.) The DOL also contacted Life Auto to notify it that it was not in compliance with the COBRA statute. Tr. at 194:14-195:23. On July 12, 2006, Life Auto sent Mr. Fadalla a COBRA notice, which the Court later found to be deficient as a matter of law.

On August 17, 2006, Dana Fadalla, Michael Fadalla's wife, learned that she was pregnant during a doctor's visit that was prompted by bleeding, cramping, and nausea. (Deposition of Dr. James Q. Jardine, M.D. ("Jardine Depo.") at 14:9-17; Tr. at 16: 18-20 and 137:16-18.) Mrs. Fadalla's condition was not immediately diagnosable. (Jardine Depo. at 25:14-26:19.) Several medical procedures, such as a dilation and curettage and laparoscopy, were delayed due to lack of health insurance. (Jardine Depo. at 28:1-32:18 and 42:1-43:17; Tr. at 139:9-140:4.) She was later diagnosed with an ectopic pregnancy, for which she had surgery on September 18, 2006. (Tr. at 136:1.)

On August 20, 2006, Mr. Fadalla voided the July 12, 2006 COBRA election form because he thought it was deficient. (Tr. at 122:16-18 and 88:15-20.) On September 6, 2006, Mr. Fadalla received a new COBRA election form sent by Clay and Land Insurance, an agent of Coleman-Taylor. (Tr. at 95:10-16 and 66:13-23.) On September 18, 2006, Mr. Fadalla signed this COBRA election form, electing coverage for himself, his wife, and his three children. (Tr. Ex. 51; Tr. at 105:16-21.) At some point after September 18, 2006 but before November 4,

---

[1] Coleman-Taylor provided health insurance for both Coleman-Taylor and Life Auto. (Tr. at 170:1-9.)

2

2006, Mr. Fadalla returned the completed election form. (Tr. at 131:2-16.) Ceridian Corporation ("Ceridian"), which administered COBRA for Coleman-Taylor at that time, could not process Mr. Fadalla's election immediately because Coleman-Taylor did not notify Ceridian of Mr. Fadalla's qualifying event until October 10, 2006.[2] (Depo. of James Trimble ("Trimble Depo.") at 22:17-20, 24:22-25:2, 45:14-20, 47:2-6.) After the notification occurred, Ceridian told Mr. Fadalla that he needed to pay his premium 45 days from the date Ceridian processed his qualifying event—October 10, 2006—which made Plaintiffs' premium due on November 24, 2006. (Trimble Depo. at 49:16-50:6, 51:23-52:24, and 54:1-9; Tr. at 111:3-10.) On November 16, 2006, Mr. Fadalla wrote a check to COBRA Services to pay his premium. (Tr. Ex. 60; Tr. at 109:4-13.) On November 30, 2009, however, the Fadallas' COBRA coverage was terminated because they did not pay the next premium.[3] (Trimble Depo. at 76:19-23.)

Plaintiffs filed a complaint in the United States District Court for the Western District of Tennessee against Defendants on October 10, 2006, alleging several causes of action, including failure to provide adequate COBRA notice. In the Court's order granting in part and denying in part Defendants' motion for summary judgment, the Court found Defendants' July 12, 2006 COBRA notice insufficient as a matter of law—that it was facially invalid but timely—and denied Defendants' motion for summary judgment on Plaintiffs' COBRA notification claim with regard to continued health coverage. (D.E. #218.) Thus, the COBRA issues going forward were limited only to statutory penalties and attorney's fees. The Court then severed Plaintiffs' other claims from their claims for damages under COBRA, and the Court heard testimony and

---

[2] Kathy Hall, an employee of Clay and Land Insurance, faxed the documents notifying Ceridian of Mr. Fadalla's qualifying event after business hours on October 9, 2009 but the fax was received by Ceridian on October 10, 2009. (Depo. of James Trimble ("Trimble Depo.") at 66:20-68:16.)

[3] It is unclear from the facts whether Plaintiffs' coverage was cancelled due to actions taken by Plaintiffs or lack of payment. (See Tr. at 121:1-12 and Trimble Depo. at 76:19-23.)

argument on Plaintiffs' claims for damages under COBRA on August 21, 2009 during a non-jury trial.

### III.  CONCLUSIONS OF LAW

Plaintiffs claim they are entitled to the full statutory penalty for each family member for the number of days that they did not have health insurance coverage and also are entitled to their attorney's fees and costs.  Defendants claim that Plaintiffs are not entitled to statutory penalties because they did not comply with the statutory requirements[4] or, in the alternative, because the July 12, 2006 notice was sent in good faith and caused Plaintiffs no prejudice.

**A. COBRA Damages**

Section 502(c)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(c)(1), states:

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 606, section 101(e)(1), section 101(f), or section 105(a) [29 USCS § 1166(a)(1) or (4), 1021(e)(1), 1021(f), or 1025(a)] with respect to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $ 100 a day from the date of such failure . . . , and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

The civil penalty has been adjusted from $100 per day to $110 per day.  29 C.F.R. § 2575.502c-1.

---

[4] At the close of Mr. Fadalla's testimony, Defendants moved to dismiss on the basis that Plaintiffs did not comply with the COBRA statute and is thus not entitled to COBRA coverage because Plaintiffs did not pay their premium within 45 days of electing COBRA coverage.  At the outset of trial, the Court overruled Plaintiffs' objection to Defendants' putting on proof on this argument.  Defendants renewed their motion at the close of proof.  Even if this were a valid, properly raised argument, the Court finds that Defendants are estopped from asserting it because its agent, Ceridian, told Mr. Fadalla that he could pay his premium by November 24, 2006.  Therefore, Defendants' motion to dismiss is denied.

The statute expressly gives the Court discretion in imposing penalties for an employer's failure to provide proper COBRA notice. In determining whether a penalty may be imposed, the Court may take into consideration any showing of bad faith and prejudice to the plaintiff. Bartling v. Fruehauf Corp., 29 F.3d 1062, 1068 (6th Cir. 1994). The Sixth Circuit has noted that many courts have refused to impose any penalty at all under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith. Id. (citations omitted). These civil penalties are designed to serve a deterrent effect. See e.g., Holford v. Exhibit Design Consultants, 218 F. Supp. 2d 901, 908-09 (W.D. Mich. 2002) ("The whole intent of this discretion is, while avoiding Draconian justice, to construct a remedy which regards the violation with sufficient seriousness that it will not be repeated."); Garst v. Wal-Mart Stores, Inc., 30 Fed. Appx. 585, 591 (6th Cir. 2002) ("The purpose of ERISA's penalty provision is not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information.") (citations omitted). The penalties are calculated from the last day on which Coleman Taylor, as plan administrator (Tr. at 169:1-16),[5] could have delivered a COBRA notice to Plaintiffs under the statute's 44-day notice period. See Holford, 218 F. Supp. at 904. Thus, Plaintiffs will not be awarded statutory penalties before July 15, 2009 (the forty-fifth day after the qualifying event).

The Sixth Circuit has not addressed the issue of whether penalties may be awarded separately for each member of the same family who is affected by a single COBRA notice violation. In fact, it appears that few courts have addressed this issue, and few are in agreement. See e.g., Wright v. Hanna Steel Corp., 270 F.3d 1336 (11th Cir. 2001); Compare Curbelo-Rosario v. Instituto de Banca y Comercio, Inc., 248 F.Supp. 2d 26, 31 (D.P.R. 2003) with Torres-Negron, et al., v. Rammallo, 203 F.Supp. 2d 120, 126 (D.P.R. 2002). Subparagraph (A)

---

[5] Plaintiffs also have sued Shelia Hicks, as an agent of the plan administrator, and the Court construes this claim as one against Ms. Hicks in her official capacity only.

5

of 29 U.S.C. § 1132(c)(1) suggests that failure to provide proper COBRA notification to a participant[6] and his or her beneficiaries[7] is treated as one violation for penalty purposes. The last sentence of the statute states that "each violation [of the notice requirement] with respect to any single participant, and each violation [of the information requirement] with respect to any single participant or beneficiary, shall be treated as a separate violation." The omission of the phrase "or beneficiary" with respect to violations of the notice requirement indicates that failure to provide notice to a beneficiary would not be a separate violation for penalty purposes. See e.g., Burris v. Five Carpenter Dist. Council Health & Welfare Fund, Case No. 3:01-cv-30091, 2004 U.S. Dist. LEXIS 2341, at *15 n.3 (S.D. Iowa Jan. 15, 2004). Under the plain language of the statute, penalties are not available to beneficiaries for a COBRA notice violation. Thus, Plaintiffs may not recover a penalty for each family member but instead, for one violation only.

In analyzing Plaintiffs' claim, although not dispositive, the Court will look to whether there has been bad faith on the part of Defendants and whether Plaintiffs were prejudiced by Defendants' failure to provide proper notice. The Court finds that Defendants did not act in bad faith. Prior to Mr. Fadalla's insufficient COBRA notice, Coleman-Taylor used an online system to notify its agent of an employee's qualifying event and, in turn, to send out a COBRA notice. In this case, Coleman-Taylor had recently changed health insurance providers and not yet set up a system, or become aware of the system, for notifying its agent of an employee's qualifying event. Coleman-Taylor provided Mr. Fadalla with the forms to enroll in its new insurer, Humana, and sent Mr. Fadalla a timely, though facially deficient, COBRA notice. Such actions

---

[6] A "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." 29 USC § 1002(7).

[7] A "beneficiary" as "a person designated by a participant . . . who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

6

do not rise to the level of bad faith; they merely demonstrate bureaucratic bungling. See e.g., Kost v. UPS, No. 95-4144-DES, 1996 U.S. Dis. LEXIS 11832, at *9 (D. Kan. July 11, 1996).

The Court, however, finds that Plaintiffs were prejudiced by Defendants' failure to provide proper COBRA notice. Despite Defendants' retroactive application of COBRA coverage and the reimbursement for Plaintiffs' out-of-pocket medical expenses during their period of no coverage, Plaintiffs were without medical coverage for approximately three months and suffered some prejudice during that time. Mrs. Fadalla had an ectopic pregnancy, and, because she had no health insurance, several medical procedures were delayed by at least two weeks. See e.g., Holford, 218 F. Supp. at 909 (finding foregone health care treatments prejudiced the plaintiff). The Court finds no other prejudice to the family. Plaintiffs presented proof that Olivia Fadalla, one of the minor children, forwent an ear tube procedure due to lack of health insurance, but the only impact on Olivia was the necessity for her to go on antibiotics, which caused no physical impact on her. (Tr. at 143:1-14.) Therefore, because Defendants' noncompliance with the COBRA statute prejudiced Plaintiffs in that it caused Mrs. Fadalla to postpone needed medical care treatment, the Court awards Plaintiffs statutory penalties in the amount of $55 per day that Defendants were not in compliance with the COBRA statute, which the Court finds to be from June 1, 2006 to September 6, 2006, ninety-seven days, for a total of $5,335.

### B. Attorney's Fees and Costs

Plaintiffs also argue that they are entitled to reasonable attorney's fees and costs. Under § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the award of reasonable attorney's fees is mandatory where a fiduciary has sued successfully to enforce an employer's obligation to make contributions to a multiemployer plan. In any other action under ERISA, however, the statute

provides that "the court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (emphasis added). The Sixth Circuit does not recognize any presumption as to whether attorney's fees will be awarded to a prevailing party. See Foltice v. Guardsman Prod., 98 F.3d 933, 936 (6th Cir. 1996); Armistead v. Vernitron Corp., 944 F.2d 1287, 1301-02 (6th Cir. 1991). In exercising its discretion, a court should consider the following five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

Foltice, 98 F.3d at 936-37. These factors represent a flexible approach to awarding fees—none of the factors is dispositive. Id. at 937.

In this case, the Court has found no bad faith on the part of Defendants. Secondly, there is no evidence in the record as to whether Defendants will be able to satisfy an award of attorney's fees. While an award of attorney's fees could have a deterrent effect on other employers changing insurance plans, the Sixth Circuit has recognized that the weight of the third prong is greatest in cases involving culpable conduct. See e.g., Smiljanich v. GMC, 302 F. App'x. 443, 452 (2008 6th Cir); Gard v. Blankenburg, 33 F. App'x. 722, 732 (6th Cir. 2002) ("When there is little evidence of culpability or bad faith, however, there is no reason to seek deterrence beyond that which comes with holding fiduciaries liable for their breaches of fiduciary duty."). The fourth factor is inapplicable as Plaintiffs' claim does not involve a class or a novel legal question. As such, the fourth factor does not weigh in favor of either party. See e.g., Smiljanich, 33 F. App'x. at 452. Finally, the relative merits of the parties' positions favors

8

an award of attorney's fees as Plaintiffs unequivocally prevailed on their claim of failure to provide proper COBRA notice.  Notwithstanding, the Court finds that the factors, taken as a whole, do not favor an award of attorney's fees.  Therefore, Plaintiffs request for attorney's fees and costs is hereby **DENIED.**

## IV.  CONCLUSION

In conclusion, the Court awards Plaintiffs $5,335 in statutory penalties and **DENIES** Plaintiffs' request for attorney's fees.

**IT IS SO ORDERED** this 13th day of October, 2009.

<u>s/Bernice Bouie Donald</u>
**BERNICE BOUIE DONALD**
**UNITED STATES DISTRICT JUDGE**